Thomas J. **FULLER**, Appellant,

v.

**STATE of Indiana, Appellee.**

**No. 983 S 338.**

Supreme Court of Indiana.

Nov. 22, 1985.

Susan K. Carpenter, Public Defender, Ihor N. Boyko, Sp. Asst., Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Amy Schaffer Good, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

This is an appeal from a denial of a petition for post-conviction relief. Appellant plead guilty pursuant to an oral plea agreement to second degree murder, I.C. § 35–1–54–1 (1969) (Since repealed). He received a life sentence.

Appellant raises six issues on appeal: (1) whether he gave his guilty plea voluntarily, knowingly and intelligently; (2) whether the plea agreement called for the sentence to be determined by a recommendation in the pre-sentence report; (3) whether his counsel was ineffective; (4) whether his life sentence for second degree murder is con-

stitutional; (5) whether trial court erred in allegedly not considering his pre-sentence report; and (6) whether trial court erred in allegedly not giving appellant an opportunity to address the trial court prior to sentencing.

These are the facts pertinent to the appeal. On September 1, 1971, appellant was hunting in a wooded area near the Mississinewa river, two miles north of Marion, Indiana. He encountered Rex Plummer and Deanna Decker. Plummer angrily approached appellant. Appellant shot Plummer with a shot gun and killed him. Immediately thereafter, Decker started running; however, appellant chased her and captured her. He then choked her to death with a rope tightened by a stick. On December 8, 1971, he pled guilty to the second degree murder of Deanna Decker. The State reduced the first degree murder charge for the killing of Decker to second degree murder. On December 22, 1971, appellant received a life sentence for the second degree murder of Decker. On May 2, 1977, he filed a pro se petition for post-conviction relief. On May 27, 1977, the Public Defender of Indiana filed a motion for change of venue from the judge. The trial court granted the motion on June 6, 1977, and a new judge assumed jurisdiction over the case. On April 20, 1982, after nearly five years of continuances, the post-conviction court held an evidentiary hearing on the petition. On January 31, 1983, the post-conviction court denied the petition for post-conviction relief and entered its findings of fact and conclusions of law.

In post-conviction proceedings Defendant bears the burden of proving his contentions by a preponderance of the evidence. *Lamb v. State* (1975), 263 Ind. 137, 143, 325 N.E.2d. 180, 183. The trial judge, as trier of the facts is the sole judge of the weight of the evidence and the credibility of the witnesses. *Rufer v. State* (1980) [274], Ind. [643], 413 N.E.2d. 880, 882. Defendant stands in the postition of one appealing from a negative judgment. In such cases, it is only where the evidence is without conflict and leads to but one conclusion, and the trial court has reached an opposite conclusion, that the decision will be disturbed as being contrary to law. *Walker v. State* (1978), 267 Ind. 649, 651, 372 N.E.2d. 739, 740.

*Popplewell v. State* (1981), Ind., 428 N.E.2d. 15.

## I

■ Appellant argues that his guilty plea was not intelligently, knowingly or voluntarily given.

A plea of guilty is an admission or confession of guilt made in court before a judge. It is also a waiver of specific constitutional rights. *Anderson v. State* (1984), Ind., 465 N.E.2d. 1101. The guilty plea hearing in the case at bar was held on December 8, 1971; consequently, the record must ˙disclose that the trial court complied with the advisement of rights standards set forth in *Boykin v. Alabama* (1969), 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed. 274.

"Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First, is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by reason of the Fourteenth. *Mallory v. Hogan,* [ (1964) ] 378 U.S. 1 [84 S.Ct. 1489, 12 L.Ed.2d 653]. Second, is the right to trial by jury. *Duncan v. Louisiana* [ (1968) ] 391 U.S. 145 [88 S.Ct. 1444, 20 L.Ed.2d 491]. Third, is the right to confront one's accusers. *Pointer v. Texas* [(1965)], 380 U.S. 400 [85 S.Ct. 1065, 13 L.Ed.2d 923]. We cannot presume a waiver of these three important federal rights from a silent record."

*Boykin, supra* 243, 89 S.Ct. at 1712. Furthermore, since the guilty plea hearing was held before December 4, 1981, the standard of review to be employed is the entire record "standard" set forth in *Neeley v. State* (1978), 269 Ind. 588, 382 N.E.2d. 714. See *Williams v. State* (1984), Ind., 468 N.E.2d. 1036.

■ The pertinent part of the December 8, 1971, guilty plea hearing is set forth here.

Q. You understand, as yet, you have not pled guilty so you are not yet subject to any of the penalties. Now, you understand that you are entitled to a jury trial in this matter?

A. Yes, I do.

Q. Do you further understand that— you are given to understand that if this case is tried you have a right to be present at all times testimony is given. You have a right to have a copy of the indictment, and have it explained to you. If there are those in the area who could testify for you, you have full power and authority to subpoena those persons in to testify for you. Do you understand this?

A. Yes, sir.

Q. Also the burden never shifts to the defendant in a case like this. In otherwords you do not have to take the witness stand. Do you understand this.

A. Yes, sir.

Q. You don't have to testify against yourself.

A. Yes, sir.

It is clear that the trial court advised appellant of his right to a trial by jury and his right against compulsory self-incrimination. It is also clear, in light of the September 10, 1971, arraignment where the trial court specifically advised appellant of his right to confront his accusers, that the trial court's use of the words "right to be present at all times testimony is given" adequately conveyed to appellant that he had a right to confront his accusers. The record here satisfies the *Boykin* requirements.

Further assigned errors alleged are to be resolved by reference to the status of the law deemed applicable at the time of the guilty plea. These errors are set forth here:

1. whether trial court advised him of the elements of the charged offense and their relationship to the facts of his conduct;

2. whether trial court advised him of his right to a public and speedy trial;

3. whether trial court advised him of the possible penalties for the charged offense;

4. whether trial court advised him that the State must prove him guilty beyond a reasonable doubt.

5. whether trial court advised him of the concept of waiver;

6. whether trial court advised him that it was not bound by any plea agreement;

7. whether trial court inquired as to the existence of a plea agreement.

■ At the time the guilty plea was entered in this case, December 8, 1971, the *Boykin* requirements were mandatory. See *Williams v. State* (1975), 263 Ind. 165, 325 N.E.2d. 827. As was mentioned, the *Boykin* requirements were satisfied. Appellant's guilty plea was also entered before I.C. § 35–4.1–1–1 et seq. (effective July 26, 1973). Consequently, the trial court was not under any express requirement to give the advisements listed in 1 through 6 above. However, an examination of the entire record indicates that the trial court did effectively discern that appellant was aware of the content of advisements 1, elements and their relationship to facts, 2, right to public and speedy trial, and 4, possible penalties. Furthermore, appellant did not raise errors 5 through 7 in his petition for post-conviction relief or his motion to correct errors; consequently, appellate review on 5 through 7 is foreclosed. We note that appellant was not advised on the record of the State's burden of proof, but we reiterate that this was not expressly required at the time. The dominant factor which stood in the place of such formal requirements during this time in determining whether the plea was voluntarily, knowingly and intelligently given was whether the plea was counselled. Here appellant had counsel. The circumstances of his guilty plea, including the advisement

of *Boykin* rights, the advisement of other constitutional rights and the presence and assistance of counsel, indicate that the sentencing court was justified in accepting appellant's guilty plea and the post-conviction court was justified in concluding that the plea was voluntarily, knowingly and intelligently given under the law deemed applicable at the time.

## II

■ Appellant claims that his plea agreement called for the court to sentence him in the manner and for the term that might be recommended by the probation officer in the pre-sentence report.

The existence of a plea agreement is not in dispute; however, the terms of the plea agreement are in dispute. The State contends that the length of the sentence was not part of the agreement, rather the agreement consisted of dismissing the first degree murder charge for the murder of Plummer and of lowering the first degree murder charge for the murder of Decker to second degree murder in exchange for appellant's guilty plea thereto. The post-conviction court found that such was the case. The evidence supports the post-conviction court's finding.

Appellant's trial counsel testified that the plea agreement did not contain any terms in regard to the determination of sentence. This direct statement was made several times during his testimony at the post-conviction hearing and its meaning and import are unmistakable.

The clear statement of defense counsel which amply supports the trial court's findings, is however contradicted by the direct testimony of appellant and by inferences arising from other evidence that appellant expected to receive the lesser sentence which was in fact recommended in the pre-sentence report. This conflict in the evidence was for the trier of fact to resolve. The resolution reached was well within the evidence, and the court was warranted in concluding the appellant's sentence expectations were not based upon a term of the plea agreement.

## III

Appellant argues that the post-conviction court erred in not finding that he was denied effective assistance of counsel. He contends that trial counsel did not properly advise him as to the options pertinent to his guilty plea.

These guidelines are to be followed when reviewing ineffective assistance claims.

"The proper standard for attorney performance is that of reasonably effective assistance. * * * Judicial scrutiny of counsel's performance must be highly deferential. * * * [T]he defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy. * * * A * * * claim * * * has two components. First the defendant must show that counsel's performance was deficient. * * * Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 2064, 2065, 80 L.Ed.2d. 674.

*Price v. State* (1985), Ind., 482 N.E.2d 719.

■ Appellant alleges that counsel was deficient in not properly advising him of all the terms in the plea agreement. At the post-conviction hearing, trial counsel testimony indicated that he had advised appellant of all the terms in the plea agreement. This is sufficient to support the post-conviction courts finding that counsel was not deficient. Appellant also alleges that trial counsel demonstrated unfamiliarity with the law. At the hearing on the petition for post-conviction relief, his trial counsel stated that in 1971 a life-sentence may have been a better deal than a fifteen-to-twenty five year sentence. Trial counsel made this statement while speaking extemporaneously about his recollection of the facts as they existed in 1971. Such a statement does not demonstrate deficient performance when guiding appellant through resolution of the two first degree murder charges.

## IV

■ Appellant argues that his life sentence for second-degree murder is unconstitutional. He was convicted of second-degree murder under I.C. § 35–1–54–1 (Since Repealed) which is set forth here:

> "Murder-Second degree.—Whoever, purposely and maliciously but without premeditation, kills any human being, is guilty of murder in the second degree, and, on conviction, shall be imprisoned in the State prison during life, or shall be imprisoned in the State prison no less than fifteen [15] nor more than twenty-five [25] years.

This Court upheld the constitutionality of the life sentence under this statute for second degree murder in *Emery v. State* (1973), 261 Ind. 211, 301 N.E.2d. 369; *Brown v. State* (1974), 261 Ind. 619, 308 N.E.2d. 699. We find no basis for overruling these decisions. Appellant's life sentence is not cruel and unusual punishment.

## V

Appellant argues that the trial court did not consider his pre-sentence report. The record of the sentencing hearing clearly establishes that the trial court considered the pre-sentence report.

Q. You understand, Mr. Fuller, that there has been a presentence investigation completed upon which the judge has studied?

A. Yes, sir.

## VI

■ Appellant argues that the trial court erred in not giving him the right of allocution prior to the pronouncement of sentencing. This was not error because there is no right of allocution upon a plea of guilty. *Minton v. State* (1980), Ind.App., 400 N.E.2d. 1177.

Denial of petition for post-conviction relief is affirmed.

GIVAN, C.J., and PRENTICE, PIVARNIK and SHEPARD, JJ., concur.